# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| LOUVEILA G. PARTRIDGE, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | Case No. CIV-18-00541-SM |
| COMMISSIONER OF SOCIAL SECURITY, | ) |  |
| Defendant. | ) |  |

## MEMORANDUM OPINION AND ORDER

Louveila G. Partridge (Plaintiff) brings this action for judicial review of the Defendant Acting Commissioner of Social Security's final decision she was not "disabled" under the terms of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented under 28 U.S.C. § 636(c) to proceed before a United States Magistrate Judge. Docs. 12, 16.[1] Following a careful review of the parties' briefs, the administrative record (AR), and the relevant authority, the court affirms the Commissioner's decision.

---

[1] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the state court records will refer to the original pagination.

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in [her] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

### C. Relevant findings.

#### 1. Administrative Law Judge (ALJ) findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. *See* AR 12-23; *see also* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). Specifically, the ALJ found Plaintiff:

(1) had not engaged in substantial gainful activity since her alleged onset date of March 5, 2015;

(2) had the severe impairments of depressive bipolar and related disorders, and cataracts;

(3) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4) had the residual functional capacity[2] to perform medium work as defined in 20 C.F.R. § 404.1567(c) and § 416.967(c) except with nonexertional limitations;

(5) could perform her past relevant work as an industrial cleaner, inserter, food assembler, and warehouse worker; and so,

(6) was not disabled.

AR 12-23.

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

### 2. Appeals Council findings.

The SSA's Appeals Council denied Plaintiff's request for review, so the ALJ's unfavorable decision is the Commissioner's final decision in this case. *Id.* at 1-5; *see Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). In applying that standard, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (citation omitted).

### B. Issues for judicial review.

Plaintiff argues the ALJ erred (1) "by failing to consider her chronic back pain impairments in the RFC and omitting all meaningful analysis of her back impairments in the SSR 16-3p analysis, and incorrectly relying on the non-examining state agency physicians' findings; and (2) "by characterizing [Plaintiff's] treatment history as 'scant' and then using that mischaracterization to impeach [her] claims." *See* Doc. 17, at 2.

C.   Analysis

   1.   **The ALJ considered Plaintiff's back impairments in the RFC assessment.**

      a.   **The ALJ's review of the record.**

Plaintiff "alleges disability because of bipolar/depression, cataracts in right eye, mental breakdown at home, and a sleep disorder." AR 16. The ALJ reviewed "the entire record" in determining Plaintiff's RFC. *Id.* The ALJ summarized Plaintiff's medical testimony that preceded the onset date. AR 18-19. He noted her 2013 treatment for chronic low back pain, and her January and February 2015 treatment from Dr. Steven Cox for chronic lumbosacral pain for which she received Norco. *Id.* at 19, citing *id.* at 334-35. The ALJ also reviewed the medical records post-dating the onset date, including Dr. Cox's treatment of Plaintiff from April 2015 to February 2016. The ALJ noted "Dr. Cox assessed her with lumbosacral strain" in April 2015 and June 2015—at both visits Plaintiff received a refill for Norco. *Id.* Dr. Cox similarly assessed her in September and December 2015, and February 2016. *Id.* At the September 2015 visit, Plaintiff noted she had "little less back pain." *Id.*; *see id.* at 331. At each visit with Dr. Cox, Plaintiff received a refill of Norco. *Id.* at 19. During some of these visits, her range of motion was reduced. *Id.* at 333-35; 376-77.

The ALJ also reviewed Plaintiff's visits to Dr. Priya Samant and Jamie Kerr, APN, in 2016. *Id.* at 20-21, *see* Doc. 21, at 3. When Plaintiff first visited Dr. Samant, she reported low back pain, *see* AR 410, but there is no other mention of back pain in the medical evidence of record.

At the hearing, the ALJ inquired about Plaintiff's ability to lift fifty pounds. *Id.* at 38. Plaintiff responded she might be able to lift fifty pounds once, but not throughout the day. *Id.* Plaintiff agreed that "occasionally lifting 50 pounds" was an "accurate description of what [she] did" in her previous position, which was for medium work. *Id.* at 37. In considering "the entire record," the ALJ gave great weight to the State agency physicians, "who assessed that [Plaintiff] retained the residual functional capacity for medium work." *Id.* at 22. The ALJ considered Plaintiff's history of lower back pain when assessing the RFC. The ALJ noted that the medical evidence of record indicated that no physician has ever placed "any substantiated permanent limitations or restrictions upon [Plaintiff's] ability to perform basic work activities." *Id.*

An ALJ is not required to discuss every piece of evidence, and here "the record . . . demonstrate[s] that the ALJ considered all of the evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "[T]he [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." Further, the decision must "provide this court with a sufficient

6

basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). The ALJ has done so here, and substantial evidence supports the ALJ's RFC. *See also Coast v. Astrue,* 2014 WL 5441198, at *4 (D. Colo. Oct. 27, 2014) (The failure "to consider a non-severe impairment at step four is a harmless error when there is no substantial evidence that would allow a reasonable factfinder to include any limitation based on that impairment in the RFC." (citing *Alvey v. Colvin*, 536 F. App'x 792, 795 (10th Cir. 2013)).

### b. The ALJ's SSR 16-3p analysis.

#### i. Legal standards.

Ruling 16-3p articulates a two-step process for evaluating a claimant's symptoms. SSR 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016). First, the ALJ determines "whether the individual has a medically determinable impairment . . . that could reasonably be expected to produce the individual's alleged symptoms." *Id.* The ALJ "will not find an individual disabled based on alleged symptoms alone." *Id.*

Second, the ALJ "evaluate[s] the intensity and persistence of an individual's symptoms . . . and determine[s] the extent to which an individual's symptoms limit his or her ability to perform work-related activities for an adult." *Id.* In evaluating the intensity and persistence of a claimant's symptoms, the ALJ "examine[s] the entire case record, including the objective

7

medical evidence." *Id*. The ALJ "must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record." *Id*.

As part of that analysis, the ALJ assesses: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain and other symptoms; (5) other treatment the claimant receives or has received for relief from pain and other symptoms; (6) "any measures" the claimant uses or has used to relieve pain and other symptoms; and (7) "other factors" concerning the claimant's functional limitations and restrictions due to pain and other symptoms. 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3). And, credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (citation omitted).

### ii. The ALJ's application of SSR 16-3p.

Plaintiff maintains that the "overwhelming evidence" supports her claims that she cannot lift up to fifty pounds for one-third of the work day as required for medium work. Doc. 17, at 17. As the Commissioner notes,

Plaintiff cites largely her subjective complaints for support. *Id.* at 17-18, *see* Doc. 21, at 8. In considering her daily activities, the ALJ noted Plaintiff "has testified and described daily activities that are not limited to the extent one would expect, given [her] complaints of disabling symptoms and limitations."[3] AR 22. The ALJ summarized Plaintiff's daily activities:

> She is able to take care of her own personal needs. She takes care of a grandson she adopted in 2016. She prepares meals. She performs cleaning and the laundry. She goes outside twice a day. She walks. She drives a car. She rides in a car. She rides a bicycle. She goes out alone. She shops in stores. She manages he[r] own funds. She counts change and uses a checkbook/money orders. She watches television. She spends time with others. She mainly talks on the phone and visits a friend once every week or two. She could walk one-half a mile. She could follow written instructions.

*Id.* (citing *id.* at 405-11, 209-17, 226-33).

In her daily activities report, Plaintiff also noted she could lift only forty pounds. *Id.* at 215. And as noted, she testified that she could not lift fifty pounds "throughout a whole day." *Id.* at 38. The ALJ considered and "gave some weight" to Plaintiff's statements. *Id.* at 22. *See White v. Comm'r of Soc. Sec. Admin.*, 2017 WL 986210, at *4 (W.D. Okla. Feb. 14, 2017) (The ALJ was not "obliged . . . to categorically credit [Plaintiff's] testimony" regarding his

---

[3] This contradicts Plaintiff's statement that "[t]he ALJ found [Plaintiff's] statements credible." Doc. 17, at 18. The ALJ "considered and gave some weight" to Plaintiff's statements in her Function Report. AR 22 (citing *id.* at 209-17).

9

knee pain and other knee symptoms.), *adopted sub nom. White v. Berryhill*, 2017 WL 979069 (W.D. Okla. Mar. 13, 2017). "[T]he balance of the ALJ's credibility analysis is supported by substantial evidence in the record." *Branum v. Barnhart*, 385 F.3d 1268, 1274 (10th Cir. 2004). Plaintiff does not point to any evidence in the record—besides her testimony—that supports further limitations than what the ALJ included in the RFC, and after careful review the undersigned finds no such evidence in the medical records.

### c. The weight the ALJ gave to the State agency physicians' opinions.

Plaintiff next argues the ALJ erred in relying on the State agency physicians' opinions. Doc. 17, at 12, 23-24. Plaintiff states the "non-examining State agency physicians assessed [Plaintiff] as having an unlimited ability to push and/or pull, stated she could lift 50 pounds for one-third the workday, and noted that she did not have any postural or manipulative limitations." *Id.* at 23 (citing AR 61, 72). Plaintiff correctly noted the ALJ also gave great weight to her attending and examining physicians/clinicians, *id.* at 23; *see* AR 22, but argues that the non-examining State agency physicians' assessments were "entirely inconsistent with Dr. Cox's findings that [Plaintiff] has a decreased range of motion." Doc. 17, at 23. Plaintiff argues that because this medical evidence conflicts with Dr. Cox's findings, "the [Commissioner] must determine

credibility and resolve the conflict." *Id.* at 23 (citing *Quintero v. Colvin,* 567 F. App'x 616, 625 (10th Cir. 2014)).

Plaintiff also argues the "non-examining State agency physicians' review is minimal and incomplete" because missing from their reports were some of Plaintiff's medical assessments exhibiting "range of motion issues," and because they "completely omitted all mentions of back pain in their reports except for the one instance of where [Plaintiff] had a 'little less back pain.'" *Id.* at 23-24.

But Plaintiff's argument—that as a result of giving great weight to all these sources, conflicting medical evidence exists—falls flat. While Dr. Cox noted a decreased range of motion in her spine (and a normal gait), he never assessed any postural limitations, or limitations upon her ability to lift. AR 331-39. After seeing Dr. Cox, Plaintiff's lower back complaints nearly disappeared, save for one report. *Id.* at 407-11, 462-69. Plaintiff's suggestion that "irreconcilable gaps" resulted from the State agency physicians' minimal and incomplete review is therefore also unsupported. *See* Doc. 17, at 23. And, as the Commissioner notes, the ALJ limited Plaintiff to medium work, despite finding no severe physical impairment related to her back. *Id.* at 16; *see* Doc. 21, at 8. Plaintiff can point to no other functional limitations the medical evidence of record supports. Substantial evidence supports the ALJ's RFC.

Additionally, at step four, the ALJ found Plaintiff could perform the job of food assembler, DOT 319.484-010, which is light work, which requires exerting up to twenty pounds of force occasionally. AR 23; DOT 319.484-010, 1991 WL 672769. It also requires occasional stooping, and no crouching, crawling, or kneeling. DOT 319.484-010, 1991 WL 672769. Plaintiff argues that had the ALJ incorporated her physical impairments relating to her back pain into the RFC, "he may have found her incapable of doing even light work or elicited significantly more testimony regarding the food assembler job." Doc. 17, at 21. However, the ALJ did review Plaintiff's subjective statements that she could lift forty pounds and her limitation on squatting, bending, and kneeling. *See* AR 214-15. Plaintiff cannot meet her burden at step four to show she cannot perform light work. If there was error, it was harmless.

### 2. The ALJ's reference to Plaintiff's "scant" medical treatment records.

Plaintiff takes issue with the ALJ's "repeated" notations that Plaintiff did not have "much treatment for her back due to a lack of insurance." Doc. 17, at 26 (citing AR 18); *see also id.* (citing "scant medical documentation" and "minimal medical records"). She maintains the ALJ "impeach[ed] the severity of [her] claims" by noting her lack of insurance and medical treatment. *Id.* at 26. Plaintiff argues that the ALJ made these repeated references to the lack of medical treatment "[w]hen assessing the credibility of [Plaintiff's] claims."

*Id.* Plaintiff contends that "the ALJ never acknowledged or weighed that the reason [Plaintiff's] treatment may have been 'scant' was because of her inability to afford treatment. Instead, the ALJ made an impermissible inference by using [Plaintiff's] treatment as a means to question the severity of her impairments . . . ." *Id.* at 28.

Plaintiff is correct that her lack of insurance and inability to afford medical treatment may be a justifiable reason for either not taking medications, noncompliance with medical treatment, or for a failure to pursue treatment. *See* SSR 96-7p, 1996 WL 374186, at *8. However, nothing in the record suggests the ALJ penalized Plaintiff, somehow holding her at fault for the lack of medical records. There is no indication of such oversight in noting "her state of homelessness," or seeking medical treatment, when able, from low-cost or free clinics, as Plaintiff implies. *See* Doc. 17, at 27-28; AR 17. And Plaintiff's argument that the ALJ referred to the minimal medical records when assessing Plaintiff's credibility is unfounded. Rather, the ALJ noted the "scant" medical documentation from Plaintiff's attending and examining physicians when considering "the nature and length of the treating relationship" to determine the weight their opinions should be given. AR 21. The ALJ gave "great weight" to their opinions and made no "impermissible inference" as Plaintiff suggests. *See id.* at 22.

And the Commissioner is correct that Plaintiff's counsel did not dispute the ALJ's statement of fact that Plaintiff had "no significant physical issues fortunately." AR 32; Doc. 21, at 9. Plaintiff's counsel stated "my looking at the case doesn't vary greatly from what you explained to the [Plaintiff.]" AR 34; *see also id.* at 33 (ALJ: [U]nfortunately, we don't have a lot of medical – evidence.").

### 3. New argument.

Admittedly introducing a new argument for the first time in her reply brief, *see* Doc. 23, at 10 n.3, Plaintiff also argues that while the DOT definition of Food Assembler classifies the job as "light," the description involves "completely different work than what [Plaintiff] performed in her past job." *Id.* at 9. Plaintiff argues that she stated "she frequently lifted 25 pounds at her job, in excess of the demands of light work and consistent with medium work." *Id.* at 10 (citing AR 221). Plaintiff contends that "the job the Commissioner argues [Plaintiff] can perform is inconsistent with [Plaintiff's] description of the job, and the ALJ left that inconsistency unresolved," and that therefore "the Commissioner's argument that [Plaintiff] can perform her past work is incorrect." *Id.*

To start, the court notes that Plaintiff's counsel at the administrative hearing did not object to the terms utilized by the ALJ or the VE, but did take an active role in questioning the VE. AR 49-51. Essentially, Plaintiff disagrees

14

with the evidence provided by the vocational expert that her prior work should be classified as that of a "food assembler . . . with a DOT code of 319.484-010." *Id.* at 48. She maintains that, as actually performed, her job required frequent lifting "of 25 pounds . . . , in excess of the demands of light work." Doc 23, at 10. She also lists other requirements of the job as actually performed that are inconsistent with DOT 319.484-010, and more "akin to other warehouse worker jobs, which were medium." *Id.*

It is Plaintiff's burden to prove that she cannot return to her previous work as actually or generally performed. *See Hayden v. Barnhart*, 374 F .3d 986, 991 (10th Cir. 2004) ("[I]t was [Plaintiff's] burden to show an inability to perform her past relevant work. . . ."). Plaintiff acknowledges the court does not usually address new issues raised in a reply brief, Doc. 23, at 10 n.3, but argues she should have the chance to respond to the Commissioner's harmless error argument. *Id.* But here, in her opening brief, Plaintiff opted not to challenge the ALJ's step-four decision regarding her past relevant work as actually performed. And, despite her burden, she did not challenge the qualifications of the vocational expert to provide her expert opinion on the issue and, while her counsel cross-examined the expert on other points, she did not question her classification of her prior work. AR at 149-51. Plaintiff failed to preserve her argument that the ALJ's reliance on the VE's classification of her prior work as a food assembler lacks substantial evidentiary support. *See*

15

*Dray v. Astrue*, 353 F. App'x 147, 150 (10th Cir. 2009) (citing *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000)).

**III. Conclusion.**

For the reasons discussed above, the court AFFIRMS the Commissioner's final decision.

ENTERED this 10th day of January, 2019.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE